IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| OLE MEXICAN FOODS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | DEMAND FOR JURY TRIAL |
| | § | |
| WISCONSIN CHEESE GROUP, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Ole Mexican Foods, Inc. ("Ole") alleges the following Complaint against

Wisconsin Cheese Group, LLC ("WCG"):

## NATURE OF THE ACTION

1.    Ole is a family-owned business that has, through the tenacity and

hard-won business acumen of its owners and employees, become one of the most

highly successful manufacturers and purveyors of authentic Hispanic-style foods in

the United States, with millions of customers nationwide.  This action arises in part

out of WCG's blatant and willful infringement of Ole's distinctive VEROLÉ trade

dress by WCG's knowing use of a confusingly similar trade dress in violation of

both federal and state law.  WCG's bad faith is exacerbated by the fact that, until 2008, WCG manufactured, packaged, and distributed Ole's products bearing the VEROLÉ trade dress under contract with Ole.

2.    Ole therefore brings this action for trademark infringement and unfair competition under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), for unfair competition in violation of O.C.G.A. § 23-2-55 (2007) and the common law of Georgia, for deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-379 *et seq.* (2007), for trademark infringement under the common law of Georgia, for unjust enrichment, and for breach of contract.

## PARTIES

3.    Ole Mexican Foods, Inc. is a Georgia corporation having its principal place of business at 6585 Crescent Drive, Norcross, Georgia 30071.

4.    On information and belief, Wisconsin Cheese Group, LLC is a Wisconsin limited liability company having a principal place of business at 105 3rd Street, Monroe, Wisconsin 53566-1028.  Its registered agent for service of process is Marion Kivikoski at 105 3rd Street, Monroe, Wisconsin 53566-1028.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action under

15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b), and has supplemental jurisdiction under 28 U.S.C. § 1367(a) of claims under Georgia law.

6.     This Court has personal jurisdiction over WCG because WCG has entered into contracts with Ole in Georgia and, upon information and belief, WCG regularly transacts and conducts substantial business with the State of Georgia, and has otherwise made and established contacts within this State sufficient to permit the exercise of personal jurisdiction under Ga. Code Ann. § 9-10-91.

7.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this state.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

## I.     THE VEROLÉ TRADE DRESS

8.     Ole Mexican Foods, Inc. started as a single-location seller of corn tortillas run by its current President, Mrs. Veronica Moreno.  From this modest beginning, Ole has expanded rapidly and now supplies various authentic Hispanic-style foods throughout the United States to millions of customers.

9.     Ole is engaged in the business of manufacturing, marketing, promoting, distributing, and selling a variety of culturally Hispanic foods, including cheese, tortillas, wraps, tostadas, chips, salsa, dips, chorizo (sausage), pastries, fried pork products, and various dairy products.

3

10.    Ole offers for sale and sells its products to retail consumers through various third-party retail stores located throughout the United States.  Thus, Ole's products are sold to end-user customers through the medium of the various retail firms it supplies.

11.    Originally a tortilla company, Ole introduced a line of cheese products under the VEROLÉ trademark in 2002.  In connection with its VEROLÉ cheese products, Ole developed product packaging that created a unique, distinctive, and attractive appearance that would stand out from other cheese products in the marketplace, be immediately identifiable and recognizable to its customers, and function as a source identifier for Ole.  The key design features of the VEROLÉ packaging include: (a) a circular red and green outline; (b) a white background; (c) the brand name appearing at the top, in green lettering and in the distinctive Algerian typeface; (d) the type of cheese in Spanish (e.g., "FRESCO" or "CREMOSO") appearing in red lettering directly beneath the brand name; and (e) an English-language description of the cheese and a list of the ingredients directly beneath the Spanish-language type of cheese.  Collectively, these packaging features are referred to as the VEROLÉ Trade Dress, representative examples of which are depicted below:

4







12.    On August 6, 2013, in recognition of Ole's rights in the VEROLÉ Trade Dress, the United States Patent and Trademark Office ("PTO") issued Registration No. 4,379,394 for the mark VEROLÉ COTIJA & Design, as depicted below, for use in connection with "cheese."



A true and correct copy of the Certificate of Registration for this mark is attached as **EXHIBIT A**.

13.    Similarly, on June 8, 2013, Ole filed Application Serial No. 85/954,565 (the "'565 Application") for the mark VEROLÉ QUESO QUESADILLA & Design, as depicted below, for use in connection with "cheese."



The '565 Application was published for opposition on November 5, 2013, and the application will proceed to registration in due course.  A true and correct copy of information about this application from the PTO's Trademark Status & Document Retrieval system is attached as **EXHIBIT B**.

14.    Products featuring the VEROLÉ Trade Dress are sold nationwide

through Wal-Mart Stores, as well as in over thirty other chain stores including Publix, Kroger, Food Lion, Ingles, Winn-Dixie, and Savalot.  Sales of products featuring the VEROLÉ Trade Dress exceed $10 million annually, and have totaled over $120 million since the VEROLÉ Trade Dress first was adopted.

15.    Ole has engaged in substantial marketing and promotion of products featuring the VEROLÉ Trade Dress.  Indeed, since adopting the VEROLÉ Trade Dress, Ole has spent more than $42 million marketing and promoting its product lines.  Representative samples of marketing materials featuring the VEROLÉ Trade Dress are attached as **EXHIBIT C**.

16.    As a result of Ole's long use, sales, and promotion, the VEROLÉ Trade Dress has become distinctive and now serves to identify Ole and its high-quality cheese products.  Significantly, the VEROLÉ Trade Dress also serves to distinguish VEROLÉ products from other cheese products appearing on retail store shelves.  The consuming public in Georgia and elsewhere widely recognizes and associates the VEROLÉ Trade Dress with Ole.  Accordingly, Ole has developed great and valuable goodwill and has acquired valuable statutory and common law rights in the VEROLÉ Trade Dress.

## II. DEFENDANT'S UNLAWFUL ACTIVITIES

### A. The Former Contractual Arrangement Between Ole and WCG

17.     When Ole originally began to offer cheese products, Ole employed various outside companies to manufacture and package its cheese products.

18.     In May of 2003, Ole entered an arrangement with WCG (through its predecessor in interest, CheesAmerica/Wisconsin Cheese Group), for the supply of Ole's cheese products, some of which were marketed under the VEROLÉ trademark.   In connection with this supplier relationship, Ole and WCG's predecessor entered into a confidentiality agreement on May 2, 2003, a copy of which is attached as **EXHIBIT D** (the "2003 Agreement").

19.     As part of the 2003 Agreement, WCG's predecessor undertook that, immediately upon termination of the 2003 Agreement, it would "cease all use" of Ole's "trademarks, trade names, logos, designs, and art work, now or hereafter existing" or "any confusingly similar imitation . . . in any manner or form whatsoever." Ex. E at ¶¶ 2.4, 3.4.3.

20.     In connection with the parties' supplier relationship, Ole provided WCG with the design of its labels and packaging featuring the VEROLÉ Trade Dress.   After manufacturing cheese products pursuant to Ole's recipes, WCG would use Ole's designs to print labels featuring the VEROLÉ Trade Dress and

8

package the cheese products.

21.    During the course of the parties' supplier relationship, Wal-Mart was the largest customer of Ole's cheese products featuring the VEROLÉ Trade Dress. WCG repeatedly attempted to use its position as Ole's cheese supplier as a means to gain control of Ole's cheese business at Wal-Mart by attempting to coerce Ole into assigning rights in Ole's intellectual property to WCG through unfavorable contract terms.

22.    Beginning in late 2007, Ole's problems with WCG escalated.  Among other problems, WCG began to deliver to Ole VEROLÉ-branded products of sub-standard quality and delayed or, in some cases, failed entirely to make scheduled shipments to Ole.  WCG also unilaterally changed the parties' payment terms, again in a concerted effort to disrupt or delay shipments to Wal-Mart, Ole's largest customer.  WCG gave various reasons for all of these lapses, but when Ole personnel investigated the claimed "problems," they often were found to be non-existent.

23.    These constant interruptions and distractions had the effect WCG apparently desired—namely, severely damaging Ole's business relationship with Wal-Mart.

24.    Due to WCG's failure to serve as a reliable supplier of VEROLÉ-

branded cheese, Ole terminated its supplier relationship with WCG on February 20, 2008.

25.    After termination of the parties' supplier relationship, WCG refused to return Ole's proprietary printing plates and film used in producing packaging featuring the VEROLÉ Trade Dress.  After significant delay, during which time Ole was forced to pay to have replacement plates and film created, WCG finally returned the film in December 2010, but it never returned the plates.

26.    Ole subsequently arranged to manufacture and distribute its own cheese products in packaging featuring the VEROLÉ Trade Dress.  Ole continues to distribute and sell cheese products in packaging featuring the VEROLÉ Trade Dress to Wal-Mart and other retail customers throughout the United States.

**B.    Wisconsin Cheese Group's Infringing Product**

27.    During the period between the termination of Ole's relationship with WCG and Ole's finalization of alternative cheese sourcing, WCG began to sell a line of Hispanic-style cheese in Wal-Mart stores in the precise category and on the very same retail store shelves previously (or simultaneously) occupied by Ole's VEROLÉ-branded cheese ("the Infringing Product").

28.    In a blatant effort to trade on the goodwill of the VEROLÉ Trade Dress and to confuse unsuspecting retail customers, WCG packaged its directly

competitive Hispanic-style "queso fresco" cheese product in packaging that closely

resembles the VEROLÉ Trade Dress, as depicted below (the "Infringing Trade

Dress"):



29.    Not only is WCG's packaging confusingly similar to the VEROLÉ

Trade Dress in terms of colors and overall appearance, but WCG adopted the brand

name "LA MORENITA," drawing a close association with the famous president of

Ole, Mrs. Veronica Moreno.  Perhaps even more egregiously, WCG's packaging

uses the identical Algerian typeface for the "La Morenita" brand name that Ole

uses for the VEROLÉ mark, as depicted below:

| Verole | La Morenita |
|---|---|
|  |  |

30.    Upon information and belief, WCG began selling the Infringing Product in 2009 in Wal-Mart stores, and continues to do so as of the filing of this action.   WCG sells cheese products in packaging featuring the Infringing Trade Dress in direct competition with—and indeed on the same store shelves as—Ole's cheese products in packaging featuring the VEROLÉ Trade Dress.

31.    Tellingly, WCG does not appear to sell products bearing the Infringing Trade Dress in areas where it has no opportunity to trade off the goodwill associated with Ole's VEROLÉ Trade Dress.   As an example, Ole does not have a presence for its VEROLÉ products in Wal-Mart stores located in Puerto Rico (which operate under the name "Amigo" or "Amigo Supermarket").   Though WCG does sell its products in Puerto Rican Wal-Mart stores, WCG does not employ the Infringing Trade Dress in such stores, instead choosing to employ a very different brand name and packaging schemes, as depicted below:






32.    The Infringing Trade Dress is identical or confusingly similar to Ole's VEROLÉ Trade Dress.

33.    Ole's first use of its VEROLÉ Trade Dress in commerce is long prior to WCG's first sale of goods using the Infringing Trade Dress.

34.    WCG adopted the Infringing Trade Dress for use in connection with Hispanic cheese and introduced these goods with full knowledge of Ole's prior use

13

of the VEROLÉ Trade Dress for directly competing products. Indeed, long prior to WCG's introduction of its Infringing Trade Dress, WCG had access to and used the proprietary plates and other printing materials Ole developed to print the VEROLÉ Trade Dress on its VEROLÉ products, pursuant to its obligations and responsibilities under the parties' supplier relationship.

35. WCG did not ask for or obtain Ole's permission to use the Infringing Trade Dress in connection with its Infringing Product.

36. WCG adopted the Infringing Trade Dress for use in connection with Hispanic-style cheese in order to lead consumers to believe there is some connection or affiliation of WCG, or its goods, with Ole, the VEROLÉ Trade Dress, VEROLÉ products, or, specifically, the VEROLÉ Queso Fresco product.

37. WCG is now selling its cheese products using the Infringing Trade Dress in the United States and in this District in direct competition with cheese sold in packaging featuring the VEROLÉ Trade Dress.

38. By using the Infringing Trade Dress in this manner, WCG is intentionally trading on Ole's goodwill in the VEROLÉ Trade Dress.

39. On information and belief, WCG selected the Infringing Trade Dress because it is similar to the VEROLÉ Trade Dress.

40. On information and belief, WCG believes that, by associating itself

14

with Ole and Ole's VEROLÉ Trade Dress, WCG will substantially increases its chances of having successful products.

41.    Through use of the Infringing Trade Dress, WCG has intentionally confused relevant United States customers and consumers as to the source or affiliation of WCG's products.

**C.    The Parties' Opposition Proceedings Before the Trademark Trial and Appeal Board**

42.    On May 11, 2009, Ole filed with the PTO an intent-to-use application (Serial No. 77/734,156) for the mark LA MORENITA for use in connection with "tortillas; tostadas."

43.    Shortly thereafter, on July 6, 2009, WCG filed with the PTO its own application (Serial No. 77/774,588) to register the mark LA MORENITA, in combination with a design component as depicted below, for use in connection with "cheese."



In its application, WCG claimed that it first used the mark anywhere on April 8, 2009, and that it first used the mark in interstate commerce on April 14, 2009.

44.   As evident from the image above, WCG's applied-for design mark uses the identical font for the "La Morenita" brand name that Ole uses as part of its VEROLÉ Trade Dress.

45.   On April 22, 2010, WCG filed a Notice of Opposition (No. 91194584) with the Trademark Trial and Appeal Board, objecting to Ole's registration of the LA MORENITA mark for "tortillas; tostadas" based on WCG's alleged prior use of the "La Morenita" name in connection with cheese products.

46.   Ole, in turn, filed a Notice of Opposition (No. 91197096) on October 25, 2010, objecting to WCG's registration of the mark LA MORENITA & Design based on Ole's belief that WCG did not begin use of its mark on or before May 11, 2009 (the date Ole filed its application for the LA MORENITA mark), and/or that WCG does not have prior rights to the challenged mark.

47.   On July 28, 2011, based on a stipulation by the parties, the PTO suspended Ole's Opposition No. 91197096 pending the outcome of WCG's Opposition No. 91194584, which remains pending.

**D.   Effect of WCG's Activities on Ole and/or the Consuming Public**

48.   WCG's unauthorized use of the VEROLÉ Trade Dress in the manner described above is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation,

connection, or association of WCG with Ole, or as to the origin, sponsorship, or approval of WCG's products.

49.     WCG's unauthorized use of the VEROLÉ Trade Dress in the manner described above falsely indicates to the purchasing public that WCG's products originate with Ole, or are affiliated, connected, or associated with Ole, or are sponsored, endorsed, or approved by Ole, or are in some manner related to Ole and/or its products.

50.     WCG's unauthorized use of the VEROLÉ Trade Dress in the manner described above falsely designates the origin of WCG's products, and falsely and misleadingly describes and represents facts with respect to WCG and its goods.

51.     WCG's unauthorized use of the VEROLÉ Trade Dress in the manner described above enables WCG to trade on and receive the benefit of the goodwill in the VEROLÉ Trade Dress, which Ole has built up through great labor and expense over several years.  WCG's unauthorized use also enables WCG to gain acceptance for its own goods, not solely on its own merits, but on the reputation and goodwill of Ole and Ole's VEROLÉ Trade Dress.

52.     WCG's use of the VEROLÉ Trade Dress in the manner described above unjustly enriches WCG at Ole's expense.

53.     WCG's unauthorized use of the VEROLÉ Trade Dress in the manner

17

described above removes from Ole the ability to control the nature and quality of products provided under its trade dress and marks and places the valuable reputation and goodwill of Ole in the hands of WCG, over which Ole has no control.

54. The acts of WCG have caused irreparable injury to Ole and, unless restrained by this Court, will continue to cause irreparable injury to Ole and to the public. There is no adequate remedy at law for this injury.

## COUNT I: FEDERAL UNFAIR COMPETITION

55. Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

56. The acts of WCG complained of herein constitute trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57. WCG's infringement has been willful and in bad faith, making this an exceptional case under 15 U.S.C. §1117.

## COUNT II: UNFAIR COMPETITION UNDER O.C.G.A. § 23-2-55 AND THE COMMON LAW OF GEORGIA

58. Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

59.   The acts of WCG complained of herein constitute unfair competition in violation of O.C.G.A. § 23-2-55 (2012) and the common law of Georgia.

## COUNT III: DECEPTIVE TRADE PRACTICES
## UNDER O.C.G.A. § 10-1-370 *et seq.*

60.   Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

61.   The acts of WCG complained of herein constitute deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-372 (a) (2012).

62.   WCG's infringement has been willful and in bad faith, making this an exceptional case under O.C.G.A. § 10-1-373 (b)(2) (2012).

## COUNT IV: TRADEMARK INFRINGEMENT UNDER
## THE COMMON LAW OF GEORGIA

63.   Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

64.   The acts of WCG complained of herein constitute trademark infringement under the common law of Georgia.

## COUNT V: UNJUST ENRICHMENT

65.   Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

66. The acts of WCG complained of herein constitute unjust enrichment of WCG at Ole's expense.

## COUNT VI: BREACH OF CONTRACT

67. Ole repeats the allegations of the preceding paragraphs as if fully set forth herein.

68. The acts complained of herein constitute breach of the 2003 Agreement executed between Ole and WCG (through its predecessor in interest).

69. WCG has acted in bad faith, has been stubbornly litigious, and/or has caused Ole unnecessary trouble and expense, entitling Ole to the payment of its fees and expenses under O.C.G.A. § 13-6-11 (2012).

## PRAYER

WHEREFORE, Ole prays that:

(a) WCG, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with WCG be permanently enjoined and restrained from using in connection with WCG and WCG's Goods, the Infringing Trade Dress or any other mark, design or configuration that is confusingly similar to the VEROLÉ Trade Dress;

(b) WCG, its officers, agents, servants, employees, attorneys, and all

those persons in active concert or participation with WCG be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in WCG's possession or control that use the Infringing Trade Dress or any other mark, design or configuration that is confusingly similar to the VEROLÉ Trade Dress, and all plates, molds, matrices, and other means of making the same;

(c)     WCG be ordered to file with this Court and to serve upon Ole, within thirty (30) days after the entry and service on WCG of an injunction, a report in writing and under oath setting forth in detail the manner and form in which WCG has complied with the injunction;

(d)     Ole recover all damages it has sustained as a result of WCG's activities and that said damages be trebled;

(e)     An accounting be directed to determine WCG's profits resulting from its activities and that such profits be paid over to Ole, increased as the Court finds to be just under the circumstances of this case;

(f)     Ole recover its reasonable attorney fees;

(g)     Ole recover its costs of this action and prejudgment and post-judgment interest; and

(h)    Ole recover such other relief as the Court may deem appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 (b), Fed. R. Civ. P., Ole demands a trial by jury.

Respectfully submitted,

DATED: December 10, 2013

/s/ James W. Faris Jr. _____
R. Charles Henn Jr.  GA Bar No. 347098
James W. Faris Jr.  GA Bar No. 452293
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530
(404) 815-6500
(404) 815-6555 (fax)
CHenn@KilpatrickTownsend.com
JFaris@KilpatrickTownsend.com

Daniel H. Marti
(*motion for pro hac admission to be filed*)
KILPATRICK TOWNSEND &
STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, DC 20005-2018
(202) 508-5800
(202) 508-5858 (fax)
DMarti@KilpatrickTownsend.com

*Attorneys for Plaintiff Ole Mexican
Foods, Inc.*